## APRIL TERM, 1859.

37  17
71  836

37  17
72  767

37  17
79  569

37  17
80  314

### JAMES A. ROOT et al. *v.* WILLIAM M. MCFERRIN.

1. HEIR: TITLE TO REALTY VESTS IN HIM ON THE DEATH OF HIS ANCESTOR.—Upon the death of an intestate his realty descends to his heirs, and their title can only be divested by their own voluntary act, or by regular sale, under the decree of a court of competent jurisdiction, made in pursuance of law.
2. PROBATE COURT: JURISDICTION OF, AS TO REALTY, SPECIAL AND LIMITED.—No jurisdiction is granted by the Constitution to the Court of Probates, over the realty of an intestate decedent. The power of the Court of Probates over the realty, is derived from legislative grant, and this grant is the donation of a special and limited jurisdiction, which can only be exercised in strict accordance with the conditions and limitations imposed by the legislature.
3. SAME: SAME.—The Court of Probates, as to the jurisdiction conferred by the Constitution, is a court of original and general jurisdiction, but as to the power over the realty, conferred by the legislature, its jurisdiction is special, inferior and limited.
4. JURISDICTION: NO PRESUMPTION IN FAVOR OF COURTS OF SPECIAL AND LIMITED JURISDICTION.—No presumption will be indulged in favor of the jurisdiction of a court of inferior, special, and limited jurisdiction; in such cases all the jurisdictional facts must appear affirmatively in the record, or else the judgment will be void.

VOL. VIII.—2

5. PROBATE COURT: SALE OF LANDS TO PAY DEBTS: RECORD MUST SHOW NOTICE.—
It must appear affirmatively by the record, in a proceeding by an administrator
against the heirs to sell real estate for the payment of debts, that notice was
given to the heirs as the statute requires. Parol evidence is inadmissible, to
supply an omission in the record in this respect.

6. STATUTE OF LIMITATIONS: VOID DEED ADMISSIBLE TO SHOW COLOR OF TITLE.—
A deed of the administrator, attempting to convey the realty of his intestate,
though void for a failure to comply with the provision of the statute in procuring
the order of sale, is nevertheless competent evidence for the defendant in an
action of ejectment by the heirs against the grantee, to show color of title and
adverse possession, where the defence relied on is the Statute of Limitations.

7. SAME: RULE, WHERE RIGHT OF SEVERAL PLAINTIFFS IS JOINT AND SEVERAL.—
Where the interest or right of several plaintiffs is *joint,* if all be under a
disability to sue, at the time their right of action accrues, the statute will not
commence running against any of them until the disability be removed from
all; and where at the time the right of action accrues, one of them is under
no disability, the statute will from that time commence running against all;
but these rules do not apply where the right of the plaintiffs is *joint* and *seve-
ral.* In such a case, the statute will run or not against each of the several
plaintiffs respectively as he may or may not be under one of the disabilities
mentioned in the statute, and the right of one *may* be barred, and that of
another be unaffected by the statute.

8. HEIRS: INTEREST IN REALTY, JOINT AND SEVERAL: STATUTE OF LIMITATIONS.
—The interest of the heirs in the realty of their ancestor is joint and several,
and hence in a joint action of ejectment by them for its recovery, the Statute of
Limitations will be applied to each of the several plaintiffs, in the same manner
as if he had sued singly for his share.

ERROR to the Circuit Court of Marshall county; Hon. P. T.
Scruggs, judge.

Both the plaintiffs and defendants prosecuted a writ of error to
the judgment in this cause.

This was an action of ejectment by the heirs of James A. Root
against McFerrin, to recover possession of Section 25, Township 1,
Range 4 west, situated in Marshall county. The defendants
pleaded the general issue, with notice of a claim for the value of
the improvements made on the *locus in quo,* before the action was
commenced.

Aaron Root, under whom both parties claim, died seised of the
said premises, September 20th, 1838; the plaintiffs below, it is
admitted, are the children and heirs of the said decedent, Root.

The suit was brought September 12th, 1856.

It was satisfactorily proved that the said plaintiffs were born respectively at the dates following, to wit:

Sarah Jane Carey, October 1st, 1822.

James A. Root, October 12th, 1826.

Harriet H. Couch, June 8th, 1828.

Margaret A. Root, December 18th, 1831.

Elizabeth C. Root, May 6th, 1833.

Thomas J. Root, January 5th, 1838.

Sarah Jane and Miles Carey were married December 23d, 1845.

Harriet H. intermarried with —— Couch July 6th, 1847, and the said Couch died in the spring of 1856.

The decedent, A. Root, was the owner of the land sued for, at his death; the plaintiffs below are his heirs at law. B. D. Anderson, as administrator of said decedent, sold the said lands, and the defendant claims the same derivatively under the purchase, at said sale, and was in possession of the premises when the suit was brought.

The said lands were sold by the said administrator on the 5th October, 1840, and under said sale the purchaser immediately entered upon them, and since that time they have been held and occupied by the said purchaser, or those claiming under him, adversely to the plaintiffs and all other persons.

Defendant offered in evidence, a duly certified transcript of the proceedings of the Probate Court of the county of Pontotoc, appointing said B. D. Anderson administrator of the estate of said Aaron Root, deceased, and directing him to sell the real estate of his said intestate. This transcript shows that at the April term, 1840, the said administrator made a report, under oath, to said Probate Court, of the personal estate and the liabilities of the said decedent, Root; and at the same time suggested that the sale of the realty belonging to said estate was necessary for the payment of debts, and thereupon the following order was made by the court:

" This day came into court, Benjamin D. Anderson, administrator of the estate of Aaron Root, deceased, and exhibited, on oath, an account of the personal estate and debts of said deceased, showing, to the satisfaction of the court, that the personal estate of the said deceased is insufficient to pay the debts of the said

deceased ; whereupon it is ordered by the court, that a citation be issued, directing all persons interested in the lands, tenements, and hereditaments of said deceased, to appear before the Probate Court of Pontotoc county, to be held at the court-house in the town of Pontotoc, on the 18th day of May, 1840, then and there to show cause, if any they can, why so much of the lands, tenements, and hereditaments should not be sold, as to pay the residue of the debts of said deceased ; and that such citation be given, by posting up three or more advertisements in the counties where the said lands, tenements, and hereditaments lie, and that said citation be published in ' The Holly Springs Banner,' a public newspaper printed in the town of Holly Springs, in the county of Marshall, in the State of Mississippi, until said 18th day of May."

It does not appear that anything was done under this order, but afterwards, at a special term of said court, held June 1st, 1840, the order following was made :

" This day came Benjamin D. Anderson, administrator of the estate of Aaron Root, deceased, into open court, having shown to the satisfaction of said court, that the personal estate of said decedent is insufficient to pay the debts against said estate ; whereupon, it is ordered by the court that a citation issue, directed to all persons interested in the lands, tenements, and hereditaments of said deceased, to appear before the Probate Court of Pontotoc county, to be held at the court-house, in the town of Pontotoc, on Monday, the third day of August next, then and there to show cause, if any such they can, why so much of the lands, tenements, and hereditaments shall not be sold as to pay the residue of the debts of said deceased, and that such publication be given of this notice, as is by law directed."

And then at a special term of the court, held on the 3d of August, 1840, the following order was made :

" It appearing to the satisfaction of the court, now here, that citations have been issued according to law, directing all persons interested in the lands, tenements, and hereditaments of Aaron Root, deceased, to be and appear before the Probate Court of Pontotoc county, to be held at the court-house in the town of Pontotoc, on this day, to show cause, if any they can, why so much of the said lands, tenements, and hereditaments should not be sold as

Root et al. *v.* McFerrin.

would be sufficient to pay the residue of the debts of the said deceased, and no such person having appeared, it is ordered by the court, that Benjamin D. Anderson, administrator of the estate of said deceased, sell all of the following described lands, or a sufficient quantity thereof for the purposes aforesaid, on a credit of twelve months, viz. : Section 25, Township 1, Range 4 west," &c. &c.

The transcript next contains a report of the sales of the real estate belonging to the estate of Aaron Root, deceased, made on the 5th of October, 1840, pursuant to an order of the Probate Court of Pontotoc county ; which report embraced the land in controversy, to wit: Section 25, Township 1, Range 4 west, as sold to J. D. Bradford for $2579 20, and was sworn to and subscribed before the Probate Judge of Pontotoc county by B. D. Anderson, January 5th, 1841, and by the said Probate Judge ordered to be recorded.

Defendant also offered in evidence, along with said record, the deposition of B. C. Earle, in the words and figures following :

"I am acquainted with the clerk's office of the Probate Court of Pontotoc county, Miss. ; I was appointed deputy clerk in February or March, 1849, and had the entire management of the office, as deputy, from some time about April, 1849, until November of the same year, when I was elected clerk, and was re-elected in November, 1851 ; and since November, 1853, have been most of the time acting as deputy clerk. I was but little about the office in the year 1840, and cannot state of my own knowledge, how the business of the court was done, and the office kept, about the year 1840. When I went into the office in 1849, I found the minutes of the court and the records kept in well-bound books ; the papers pertaining to the office were not regularly filed and kept in proper places, but were in confusion, and the papers of different cases mixed together in the same bundle, without much system or regularity. All the papers in the office, as well those of the early cases as those of later date, were in the confusion to which I have referred. The minutes of the court, about the year 1840, were generally short, and as I conceive very imperfectly written, and material facts omitted in many cases."

On his cross-examination, this witness stated, that " there had been none of the records or papers mutilated that he was aware of ; that he may have been present in the court about the year 1840,

but did not pay any attention to the business of the court at that time, and did not know what was actually done by the court, and if the minutes show all that was done, the court did not do its duty in all cases." Witness says, " his meaning is, that the minutes of the court do not show all things that he thinks should have been done ; that his knowledge of the minutes made about 1840, is derived from reading the minutes of the court since he has been in the office ; that he has had to look over them, and frequently had to copy portions of them. The minutes of the court about the year 1840, are not as full and as formal as they have been made for a few years past."

Defendant also offered to prove by Thomas A. Falconer, that in the year 1840, the newspaper called " The Holly Springs Banner" was published in Holly Springs, by E. Junius Foster, and that he, Falconer, purchased the office of the said Foster, who had left the State, and is now beyond its limits ; that no file of the paper which the said Foster published now exists, or can be found, and that the receipt produced, and which is in the words and figures following, to wit :

" BENJAMIN D. ANDERSON, Administrator of Aaron Root,                     DR.
     1840.                                    To E. JUNIUS FOSTER.
April 21.   To advertising citation,   .   .   .   .   .   .   . $10 00
June 19.   To      "      notice to all persons, .   .   .   .   . 8 00
                                                                 _____
                                                                  $18 00

Received the above sum of eighteen dollars in full of the above account, from B. D. Anderson, administrator, this 6th day of December, 1841.
                                                    E. JUNIUS FOSTER."

—is in the handwriting of the said E. Junius Foster, and that the signature thereto, is the genuine signature of the said Foster."

To the reading of so much of the said transcript of the records of the Probate Court of Pontotoc county as refers to the sale of the lands of the said decedent, Aaron Root, and the order of said Probate Court, as evidence in the case, the plaintiffs, by their counsel, objected, on the ground that the said proceedings were defective, in not showing that the citation ordered by the court, calling upon the heirs of the said decedent, Aaron Root, to show cause against the sale of the lands of the said decedent, had been

posted and published, as the law requires, and that the order of sale itself was defective, in not reciting that publication and posting had been made; and also on the further ground, that said proceedings were in other respects informal, irregular, and illegal; which exception to said transcript as evidence in the cause, showing authority on the part of said Anderson, administrator as aforesaid, to sell said real estate of said Root, was sustained by the court, and the said transcript was excluded from the jury, as evidence tending to show such authority, but was admitted by the court, and read to the jury, as evidence to be considered by them, in connection with the defence of the Statute of Limitations, upon which the defendant announced that he would rely; and particularly in connection with the fifth section of an act to amend the several acts of limitations, approved February 24, 1844.

To the decision of the court on the subject of the admissibility of said record, as evidence before the jury, both the plaintiffs and defendants excepted at the time; the plaintiffs, because said record had been admitted for any purpose whatever, and the defendant, because it had not been admitted for the purpose of showing the authority under which the sale of the land in controversy had been made.

The plaintiffs also objected to the admission of the testimony of the witness Earle, and to the admission of the testimony of the witness Falconer, and of the receipt of E. Junius Foster; which objections were sustained, and the said testimony excluded: to which opinions and judgments of the court, defendant excepted.

Plaintiffs also objected to the reading, as evidence, of the deed from Anderson, administrator, to John D. Bradford, the purchaser at the administrator's sale, conveying the land in controversy; which objection being overruled, plaintiffs excepted.

Defendant introduced John C. Teel as a witness, who proved that the valuable improvements made upon the land in question by defendant were worth some six thousand dollars, including the cost of putting on the land, apple and peach orchards, which witness estimated at $250; to which testimony, as to the cost of said orchards, the plaintiffs objected; which objection being overruled, plaintiffs excepted.

Defendant having also introduced, before the jury, testimony

tending to prove that the land in controversy had been sold in October, 1840, by virtue of a decree or order of the Probate Court of the county of Pontotoc, and that said sale had been *bona fide* made, and the purchase-money paid by the vendee, and that said land had been held by himself, and those under whom he claimed, adversely, since the beginning of the year 1841, under the sale aforesaid, and the testimony on both sides being closed, defendant moved the court to charge the jury as follows:

"1st. That if they believed, from the testimony, that on the 24th day of February, 1844, one of the plaintiffs had attained the age of twenty-one years, and was not at that time a married woman, insane, without the limits of the United States, or personally imprisoned; and that this action was not brought until after the lapse of three years from the 24th day of February, 1844; and if they further believe from the testimony that the land sought to be recovered in this action, was sold by the administrator of the father of plaintiffs, by virtue of an order of the Probate Court of Pontotoc county, fairly and in good faith, and that the purchase-money was paid by the purchaser at such sale, and the land has been held adversely under said sale since the year 1841; and that the plaintiffs claim said land as heirs of said Root, then they must find for defendant.

"2d. That if they believe, from the testimony, that any one or more of plaintiffs were twenty-one years of age, and not under any disability to sue, as much as five years before the bringing of this suit, and that during that time, the land sued for has been held adversely by defendant, or those under whom he claims, they must find for defendant."

In lieu of said charges asked by the defendant, the plaintiffs asked the court to give the following:

"If the jury believe, from the evidence, that the plaintiffs were all minors, at the time the cause of action accrued in this case, then the Statute of Limitations did not begin to run as against any of the plaintiffs, until the youngest became of age, and they must find for plaintiffs."

The said charges so respectively asked by the defendant and the plaintiffs, the court refused to give, but in lieu of them gave to the jury the following charge:

Root et al. v. McFerrin.

" If the jury believe, from the evidence, that any of the plaintiffs were of the age of twenty-one years at the time of the passage of the Act of 1844, and the suit was not brought within three years from that date; or that any of the plaintiffs were minors at the date of that act, and the suit was not brought within five years of their coming of age; in either case, they will find for the defendant as to them. But as to others of the plaintiffs, if there be such as were under age at the date of the act, and had not reached their majority more than five years before the commencement of this suit, they will find for them as if they had sued without joining the others."

To the refusal of the court to give the said charges so asked by the defendant and the plaintiffs, and to the giving of that which was given by the court, both of said parties excepted respectively.

The jury found for the defendant, as to the plaintiffs James A. Root, Miles Carey, and his wife, Sarah Jane Carey, and Harriet H. Couch; and they found for the plaintiffs Margaret L. Root, Elizabeth C. Root, and Thomas J. Root, together with the sum of $900, for the rent and profits due to them for the use and occupation by defendant of their portion of the lands in the complaint mentioned; and they found further, that the said defendant had made useful and valuable improvements upon said lands to the value of three thousand and one hundred dollars ($3100).

Whereupon, judgment was entered by the court, that the said plaintiffs, Margaret, Elizabeth, and Thomas, do have and recover against the said defendant, one undivided half of the lands in the complaint mentioned, with all of the privileges and appurtenances thereunto belonging, together with the said sum of $900, for the rents and profits due to them, for the use, &c., of said lands; and that said defendant do have and recover of said plaintiffs, Margaret, Elizabeth, and Thomas, the said sum of three thousand one hundred dollars ($3100), (which shall be credited with the said sum of $900) the value of his improvements; and that a writ issue, &c., but execution to be stayed, &c.; and that plaintiff recover of defendant the costs, &c.

Plaintiffs then moved the court to set aside said verdict, and grant them a new trial; which motion was refused.

And thereupon, both parties appeal to this court.

Which motion the court overruled.

McFerrin, the defendant below, assigns the following errors :

1. The exclusion of the transcript of the Probate Court, as evidence showing or tending to show legal authority for the sale of the land in controversy.

2. The exclusion of the deposition of B. C. Earle.

3. The exclusion of the testimony of Falconer, and of the receipt of E. J. Foster.

4. The refusal of the court to give the charges asked by defendant, and the giving of the charge which was given.

The heirs of Root made the following assignment of error :

1. The refusal of the court to give the charges asked by them.

2. The giving of the charge by the court in lieu of plaintiffs' charge.

3. The overruling of their motion for a new trial.

4. The admission of the evidence of Teel in relation to the value of the orchard.

5. The admission of the record of the Probate Court for any purpose.

*Watson* and *Craft*, for McFerrin.

As to the error first alleged :

The sale of the lands sought to be recovered in this action, was ordered and made for the payment of the debts of the decedent, A. Root, and in the regular administration of the estate of said intestate. They then set out the statute, Hutch. Dig. 666, 667, §§ 98, 99, 100, 101.

The foregoing was the law when the present Constitution of the State was adopted, in 1832, the 18th section of the 4th article of which provides, that

" A Court of Probate shall be established in each county of this State, with jurisdiction in all matters testamentary and of administration," &c. . . . To carry into effect this provision, an act was approved March 2d, 1833, establishing a Court of Probate in the several counties of the State, the 12th section of which declares, that all acts now (then) in force, "in relation to the duties, powers, and jurisdiction of the Orphans' Court, be and the same are hereby

extended to the Courts of Probate, so far as the same are not re-
pugnant to the Constitution, and do not conflict with the provisions
of this act." ·Hutch. Code, 721, 722. Such was the law in 1840,
when the sale in question was ordered and made ; and necessarily,
therefore, the court, in the whole proceeding, was exercising not a
*special*, but a *general* jurisdiction, and in deciding, therefore, upon
the validity or invalidity of the sale in this collateral way, the orders
and judgments of the court are to be construed by the rules ap-
plicable to courts of general jurisdiction. In the case of *Lee* v.
*Gardner*, 26 Miss. R. 521, 523, 524, it is held that the jurisdic-
tion of the Probate Court over lands "is as ample as over person-
alty:" that "they are equally liable for the payment of the debts
of the deceased, the personalty being only required to be first ex-
hausted ; and both appertain to the regular and exclusive jurisdic-
tion of the Probate Court in 'matters of administration.' " And
this view of the subject is fully sustained by the case of *Servis*,
*Admr. et al.* v. *Beatty & Killingsworth*, 32 Miss. R. 52, in which
it is decided that "whenever the legal representative of a decedent
is charged with a duty in reference to his real estate, the real estate
of necessity becomes a matter of administration. And the title
which is requisite to the discharge of that duty, vests in the repre-
sentative by operation of law."

Now, the proceedings of the Probate Court in the premises, hav-
ing been on a subject-matter that falls within its general jurisdic-
tion, they were, it is submitted, valid and binding in all collateral
proceedings at least. Had the order of sale recited, that "the
citation had been duly posted and published," it is conceded that
the sale could not have been held void ; but is not this applying to
the case principles alone applicable to courts of special jurisdiction?
Even as to courts of special jurisdiction, the rule that all necessary
jurisdictional facts must be shown, applies only as to the subject-
matter, and not as to the person. *Cason* v. *Cason*, 31 Miss. R. 578.

In the matter under consideration, there is no question as to the
jurisdiction of the court in relation to the subject-matter, and the
rule is, that "whenever the jurisdiction has once vested as to the
subject-matter, the rules which govern· its exercise, as to the per-
son, with respect to evidence, process, &c., are generally the same
as those applicable to courts of general jurisdiction." 31 Miss. R.

578.    As to this matter, then, the court was certainly one of competent jurisdiction, and " there is no principle of law better settled, than that every act of a court of competent jurisdiction shall be presumed to have been rightly done till the contrary appears. Every matter adjudicated becomes a part of the record, which thenceforth proves itself without referring to the evidence on which it has been adjudged." And again, in reference to the proposition, " that a sale by order of a court of competent jurisdiction, may be declared a nullity in a collateral action, if the record does not show affirmatively the evidence of a compliance with the terms prescribed by law, in making the sale," the court says : " We cannot hesitate in giving a distinct and unqualified negative to this proposition, on both principle and authority, too well and long settled to be questioned." *Voorhees* v. *Bank U. S.*, 10 Peters, 472, 473 ; *Cason* v. *Cason*, 31 Miss. R. 593.

In the case from which the above quotation is made, the question was as to the validity of an order of publication against non-resident defendants, which by law the court was authorized to make " upon affidavit or other satisfactory evidence" of the non-residence alleged.    There was no affidavit or any other evidence on file, showing the non-residence ; nor was there any recital on the record that such affidavit or other proof had been adduced ; still, it was held by the court, that it was not necessary that " the evidence on which a Probate Court bases its judgment in every case be shown by the record, in order to give validity to the judgment." 31 Miss. R. 592, 593.

The court further held, that " the validity of the order of publication depends entirely upon the question, whether the evidence upon which it was made was sufficient to authorize it ; and as that evidence is not stated, and is not required to be stated, the presumption must prevail that the court acted correctly, and upon proper evidence." 31 Miss. R. 593, 594.   " And when the order of publication was made, it must be taken in the absence of all showing to the contrary on the record, that the facts necessary to give jurisdiction were proved, and that the court acted properly in exercising the jurisdiction.   This rule applies as well to courts of limited jurisdiction as to those of general jurisdiction, when the matter adjudged is within the jurisdiction of the court ; and the

Root et al. *v.* McFerrin.

judgments of said courts are equally incapable of collateral investigation, however erroneous in fact they may be, and are conclusive until regularly reversed. These principles appear to have received universal sanction, and have repeatedly been recognized by this court. *Byrd* v. *State*, 1 How. 173; *Gildart* v. *Stark*, Ib. 450; *Wall* v. *Wall*, 28 Miss. 409;" 31 Miss. R. 594–5.

Now it is submitted, that the order directing the sale of the land in controversy, was within the jurisdiction of the court; that was the matter adjudged, and on the foregoing principles, it must be taken that the facts necessary to give the jurisdiction exercised were proved. In the language of the court in the case of *Cox* v. *Thomas*, 9 Grattan, 323–6, "the only question, then, would seem to be whether the subject-matter was within the jurisdiction of the court; if it was, if the jurisdiction of the court extended over that class of cases, it was the province of the court to determine for itself whether the particular case was one within its jurisdiction."

In the case of *Cason* v. *Cason*, which was as to the jurisdiction of the Probate Court, this court says: "In taking the steps necessary to confer jurisdiction as to the person, it was unquestionably within the power of the court to decide whether the evidence was necessary to establish the fact upon which that jurisdiction depended." 31 Miss. R. 594; see 9 Grattan, 328, and the case of *Prigg* v. *Adams*, 2 Salk. R. 674, there cited and approved.

See also the case of *Duval's Heirs* v. *McLoskey*, 1 Ala. Rep. 708, where the Supreme Court of Alabama held, that the jurisdiction of the County Court " to authorize administrators to sell land belonging to the estate of the intestate," attached as soon as the court recognized the petition of the administratrix; that the order for the sale of the real estate could not be considered invalid, because the record did not contain the petition filed by the administratrix, and that its decree for a sale could not be collaterally impeached by the omission to designate the heirs by name in the petition or elsewhere in the record; or by the direction of the citation to the guardian instead of to the heirs. See also *Duval's Heirs and the P. & M. Bank et al.*, 10 Ala. 636. So in the case under consideration, the jurisdiction of the Probate Court of Pontotoc county certainly attached upon the application of Anderson to sell the real estate of his intestate, Root, which the record

shows was duly made. Whether the after proceedings were regular and authorized by the proof, is an immaterial inquiry. The question under discussion is one of jurisdiction ; and not whether the order of sale was voidable, and could have been set aside by a direct proceeding instituted for that purpose. Was it void ? Manifestly, if the foregoing cases are law, it was not. See *Tucker* v. *Harris*, 13 Geo. Rep. 1. See particularly the opinion of the court on pages 16, 17, 18, 19, 20, and 21.

In *Grignon et al.* v. *Astor et al.*, 2 Howard's U. S. Rep. 319, this whole subject of jurisdiction is fully and ably discussed in a case that arose on the sale of the realty of a decedent, under a statute of Michigan, which required due notice to be given to all parties concerned, to show cause why license to make the sale by the administrator should not be granted. In this case nothing was said on the minutes of the court, or in the order of sale, as to any citation or notice to the parties concerned; and from the records of the court it was not made to appear that notice had been given to any one of the proceedings. The sale made under these circumstances was afterwards collaterally attacked, but was upheld by the Supreme Court. In the opinion of the court, the whole merits of the controversy is resolved into this single question: had the court, ordering the sale, jurisdiction of the subject on which it acted ? And after deciding this question in the affirmative, the court say, " The granting the license to sell is an adjudication upon all the facts necessary to give jurisdiction, and whether they existed or not, is wholly immaterial, if no appeal is taken; the rule is the same whether the law gives an appeal or not: if none is given from the final decree, it is conclusive on all whom it concerns. The record is absolute verity, to contradict which, there can be no averment or evidence ; the court having the power to make the decree, it can be impeached only by fraud in the party who obtains it." 6 Pet. 729. " A purchaser under it is not bound to look beyond the decree; if there is error in it, of the most palpable kind, if the court which rendered it have, in the exercise of jurisdiction, disregarded, misconstrued, or disobeyed the plain provisions of the law which gave them the power to hear and determine the case before them, the title of a purchaser is as much protected as if the adjudication would stand the test of a writ of

error ; so when an appeal is given, but not taken in the time pre-
scribed by law." 2 How. U. S. 340–1; 28 Miss. Rep. 409; 31
Miss. Rep. 578, 592–595.

In the case of *Randolph* v. *Doss and wife*, 3 How. Miss. Rep.
205, it was decided, that " when an order for publication was made
by the Probate Court on the filing of a petition for dower, it will
be presumed, in the absence of any evidence to the contrary, that
the publication was made." In their opinion, the court say, " It is
objected also that there was no notice of the application for dower,
as required by law ; but the record shows that an order of publi-
cation was made at the filing of the petition, and the cause con-
tinued down on the roll until June following. We feel bound, by
established rules, to infer that the notice was published in pursu-
ance of the order ; and that the proceedings of the court below were
regular, in the absence of any evidence to the contrary, upon the
record." Ib. p. 214. Now, this decision, it is submitted, is conclu-
sive of the present case. The record excluded shows that a cita-
tion was directed to be issued as the law required ; and that it was
ordered that such publication be made of it as the law directed ;
and that the order authorizing the sale was not made until the
term of the court at which the citation ordered the parties inte-
rested to appear and show cause, if any they could, why the realty
should not be sold for the payment of debts. All this appearing,
why is it, that in a collateral proceeding impeaching the order of
sale, every court is not bound, by established rules, to infer that
the notice was published in pursuance of the order ; and that the
proceedings of the court below were regular in the absence of any
evidence to the contrary upon the record ?

In this connection it should be particularly noted that the law
only requires the court to cause a citation to issue, directed, &c. ;
and this, the record abundantly shows, was done. Such citation,
too, was not process, which went into the hands of an officer of the
law ; this is manifest from the provision of the statute, which says,
" said citation shall immediately thereafter be set up in three of the
most public places, &c., for the space of thirty days ; and be pub-
lished for the same length of time in one of the public newspapers
in this State." Whose duty it is to comply with this direction, the
statute does not show or intimate ; nor does the statute direct or

Root et al. *v.* McFerrin.

require evidence to be produced to the court, showing that the citation has been posted and published. The posting and publishing directed are purely matters *in pais*, and there is no mode pointed out by which evidence that this has been done, is to be brought before the court, or to be perpetuated upon its records. As to the notice which the law directs to be given of a sheriff's sale, this court has held, that "the law does not require any evidence of these notices to be perpetuated. The notices are matters *in pais*, constituting no part of the record. If the sheriff should happen to return that he had given proper notice, this would not mend the matter. . . . . The purchaser, then, in many cases at least, would be driven to a bill to perpetuate testimony, or run the risk of losing his land for a defect in his title. The effect of vacating the sale is to make titles depend on parol proof." *Minor* v. *The P. & S. of Natchez,* 4 S. & M. 623.

Now, it is submitted, that the above is an authority directly in point. The notice which the law, when the sale in question was ordered and made, directed to be given of an intended application by an executor or administrator for an order directing the sale of the realty of a decedent for the payment of debts, was wholly a matter *in pais*. The language of the statute is, " which said citation shall immediately thereafter be set up in three of the most public places in the county in which such lands, tenements, and hereditaments are situated, for the space of thirty days; and be published for the same length of time in one of the public newspapers in this State." Hutch. Code, 666, sec. 98. And then the statute further declares, that " at the time specified in the said citation," &c. (Hutch. Code, 667, sec. 99), the court shall order and direct, if satisfied of the insufficiency of the personal estate to pay the debts, the sale to be made, without requiring or directing that the court before doing this shall be satisfied that the citation has been posted and published according to law. As to these matters, the statute is wholly silent. The order of the court directing citation to issue, does, however, require in express terms, " that such publication be given of this notice as is by law directed." Now, a compliance with this direction included both the posting and publication in a newspaper of the citation ordered ; and to require that the records of the court should show affirmatively

Root et al. *v.* McFerrin.

that these matters *in pais* were done, would certainly be an interpolation upon the statute, and " to make titles· depend upon parol proof." In the language of the court in *Minor* v. *P. and S. of Natchez,* 4 S. & M. 623, "these consequences are serious, and must show that to hold a sale void because of an irregularity in the officer (because of a matter wholly dependent upon parol proof, and as to which the statute is silent), without an express authority for so deciding, would come in conflict with that policy in the law, which protects *bona fide* purchasers at sheriffs' (judicial) sales."

In every other case in which the law directs parties to be summoned or notified of a proceeding by citation, the law requires such citation to be returned executed, and when by publication, that there be proof of such publication. See Hutchinson's Code, 677, Art. 12, Sec. 1. But in the law now to be construed no such requisition is found, but on the other hand, as already shown, it provides that at the time specified in the citation, or at such other time as the court may then appoint, the court shall hear and examine the allegations and proofs, and act finally upon the subject—without requiring that this shall only be done upon the return of the citation executed, or upon proof of its publication. Should it be held that the terms, " allegations and proofs," apply as well to the evidence of the due publication of the citation, as to the other matters involved in the proceeding, the· result will be the same ; since, on this view of the subject, the question of the due publication of the citation must have been directly and expressly adjudicated by the court ; and the rule is settled, that every matter adjudicated by a court of competent jurisdiction shall be presumed to have been rightly done, till the contrary appears. 2 How. U. S. 319 ; 3 How. Miss. R. 205 ; 9 Grattan, 323 ; 31 Miss. R. 578, 592, 593, 594, 595. Nor is the Probate Court required to state the evidence on which its orders, judgments, or decrees are based, or to make any recital therein touching it. 3 How. Miss. R. 205, 214 ; 31 Miss. R. 578 ; 28 Miss. R. 409. The law did require that the sale should be reported to the next term of the court after it was made ; and this, it will be seen, was done. See report in the Record, p. ———. By the act approved February 24th, 1836, the regular terms of the Pontotoc Probate Court were held on the first Mondays of January, April, July, and October. Laws of Miss.

from 1824 to 1838 inclusive, p. 562, sec. 18. The act approved February 16, 1838, providing for monthly terms of the Probate Court in most of the counties, does not embrace the county of Pontotoc.

From the foregoing review, it appears that the requirements of the law were all observed, in the sale in question, and in such case the administrator, in express terms, was authorized by the law " to make a deed to the purchaser;" which deed, the law declares, "shall vest in such purchaser as good and perfect an estate, in the premises therein mentioned, as the heirs of the decedent (Root) were seised of or entitled to, at the time of making the said order of sale." Hutch. 667, sec. 101.

It is true, that decisions have been made by this court, which are, or seem to be, in conflict with the foregoing views. The most of these decisions, however, were upon statutes conferring special and limited power upon the Probate Court. Such as the act approved December 16th, 1830, which provides for the sale of the lands of a decedent, when to the interest of the heir or devisees, &c. Regarding this and other similar acts, as conferring upon the Probate Court but a special statutory jurisdiction, the decisions in question are correct in holding, that unless it appears upon the record that the facts existed which authorized the exercise of the power, the order of the court is a nullity. But this rule, we repeat, has no application to courts of general jurisdiction. Such courts, as we have already shown, are not bound to set forth on the record the facts upon which their jurisdiction depend, or the evidence upon which their action is based. In some few instances we know, this distinction between courts of special and general jurisdiction, seems to have been lost sight of by this court, and language has been applied by it to the Probate Court generally, when it should have been limited to the cases in which it only exercises a special jurisdiction. There can now, however, it is submitted, be no valid reason assigned, why all of the decisions of this court upon this subject should not be reviewed, and the true principles of law be defined and established. To vindicate and truly set forth the jurisdiction and powers of the Probate Court "in all matters testamentary and of administration," will have no tendency to unsettle titles, or to alter or change the rules of law this court has once established, and on

the faith of which contracts have been made, or rights acquired. From such action, many of the most injurious effects of retrospective legislation would result; but in sustaining the title of the defendant in the premises to the land in controversy, the effect would be to quiet many titles, *bona fide* acquired, by purchase at judicial sales, and thereby greatly contribute to the suppression of litigation, and the repose of society.

*Secondly.* The *second* and *third* errors alleged will be considered together: they consist of the exclusion of the testimony of Earle, and of that of Falconer, in connection with the receipt of E. J. Foster.

It is submitted, that the orders of the Probate Court, excluded from the jury, are much better, both as to form and substance, than those admitted in the case of *Stevenson's Heirs* v. *McReary*, 12 S. & M. 9, 52, 53. The order of sale and the particulars connected with it in the above case are set out at length in the opinion of the court on page 52, and the opinion then proceeds:

"But in aid of this order (of sale) the present clerk of the court was examined, and testified that the book in which this order was found was the oldest book of records in the office. He was well acquainted with the records of the office; that at the date of said order, the papers and records were kept very loosely, and the orders were frequently very imperfect, put down frequently in short, and could not be understood without reference to a preceding order. Dr. Wren, who was also clerk in 1818, and acquainted with the records of the office, testifies that he found them in a very loose and disordered condition, many things unrecorded which should have been placed on record; that, from the negligence of his predecessors, many of the records may have been lost. He also stated, that he knew the clerk who made this entry; that he was a man of intemperate habits, and loose in his office business. It is insisted that the testimony of North and Wren should have been excluded; we do not think so. Nothing is more common than to prove by parol the condition of the records of an office, and the manner in which they have been kept."

Now the object of the testimony of Earle was to prove the condition of the records of the Probate Court, and the manner in which they had been kept. He says: "The papers pertaining to the office

were not regularly filed and kept in proper places, but were in confusion, and the papers of different cases mixed together in the same bundle ;" and that " the minutes of the court about the year 1840 were generally short, and, as he conceived, very imperfectly written, and material facts omitted in many cases." See his testimony at length, in the abstract. Now this testimony was certainly admissible on the principles above quoted from the opinion of the court in the case of *Stevenson's Heirs* v. *McReary*. Moreover, it was admissible in going to show that proof of the posting and publication of the order of sale might have been made and filed in the clerk's office, and have been lost in the loose and careless manner in which the papers were kept. In this point of view, the testimony was not offered in aid of a record, but in explanation of the absence of evidence as to matters *in pais*.

*Thirdly.* The court erred in not giving to the jury the charges for which defendant asked.

The action was a joint one by six plaintiffs ; and it is submitted, that upon well-settled principles, when an action of law is defeated as to one or more plaintiffs, it must fail as to all. The rule is, that in a joint action each of the plaintiffs must be entitled to recover, or no recovery can be had. 7 Cranch, 156 ; Litell's Select Cas. 436. This principle is fully recognized and sustained in the case of *Sims* v. *Ross et al.,* 8 S. & M. 557, where it was decided, that when one or more of several partners have been declared bankrupt, and discharged under the general bankrupt act, a suit cannot be maintained, in the name of the several partners, on a note owned by the firm before such bankruptcy. In this case, it was held that the Circuit Court erred in refusing to charge the jury, on the motion of the defendant, " that the plaintiffs had no right to sue in the manner and form as they had sued, and they must find for the defendant." 8 S. & M. 557.

It is not contended that the owners of real estate in coparcenary, or in common, are affected by the principle established in *Jordan* v. *McKenzie et al.,* 1 George, 32. The rule, as to realty, we believe to be, that each claimant or owner is in all cases severally barred by an adverse holding until the lapse of the period of limitation, but the barring of one or more does not affect the rights of others as to whom the period of limitation has not elapsed. But

then those not barred must, as it is competent for them to do, sue in their own names without joining others who are barred. *Barrow's Lessee* v. *Nave*, 2 Yerger, 227–230; *Wade* v. *Johnson*, 5 Humphrey, 117–120.

It is submitted, that no error occurred during the progress of the trial, prejudicial to the plaintiffs.

It will be seen that all of the questions raised as to the competency or relevancy of the testimony offered, were decided in favor of the plaintiffs, except as to the partial admission of the record from the Probate Court, the admission of the deed of Anderson, the administrator, and the admission of the testimony of Teel, as to the cost of putting on the land an apple and peach orchard, estimated at $250.

The question of the admissibility of the Probate Court record, in connection with the several statutes of limitations, on which the defendant relied, it is believed, is one of easy solution. If, as we have attempted to show, the record should have been admitted generally, it necessarily follows that there was no error in admitting it partially. The defendant was in possession of the premises, claiming adversely to all persons, on 24th February, 1844, when an act to amend the several acts of limitations was passed, the 5th section of which, on one state of facts, reduced the period of limitation applicable to the case to three years, and on another to five years. It will be seen too, that one of the plaintiffs was of age at the time of the passage of this act, and was therefore barred by the lapse of three years; and two others of the plaintiffs were also barred by the lapse of five years. It was certainly competent for the defendant, by proof, to bring his case within the provisions of this act, as well as within the general statutes of limitations, as to one or more of the plaintiffs, as the case might be; and to do this, or even in attempting to do it, it was competent and proper to have before the jury both the Probate Court record and the deed from Anderson, the administrator, to which the plaintiffs objected. See Hutch. Code, 830, sec. 5.

The testimony of Teel, as to the cost of the orchard upon the premises, was also admissible. The defendant's bill of exceptions on this point is somewhat obscure, though perhaps intelligible. Teel proved that the improvements made upon the land were worth

some $6000, "including the cost of putting on the land an apple and peach orchard, $250." The meaning of this is, that the witness did not, in estimating the value of the improvements, include therein the then value of the orchard, but only what it was worth to plant them out and to rear them. To this extent, the testimony was clearly competent; indeed, if error as to this matter was committed, it consisted in not giving the defendant the benefit of the then worth of the orchard, instead of the actual cost to the defendant.

As to the refusal of the court to give the charge for which the plaintiffs asked, enough has been said in attempting to show the error of the court in not giving the charges for which defendant asked.

The action as to three of the plaintiffs, who had been of age more than five years before the suit was brought, it is insisted, was barred by the 5th section of the Act of Limitations of 1844. And this being apparent to this court from the testimony in the record, it is submitted, that the verdict and judgment should not be disturbed, unless at the instance and for the benefit of the defendant. As to the two eldest of the plaintiffs, who had been of age more than seven years before the passage of the Act of 1844, extending the period of limitation to ten years, they were certainly barred before the action was brought, by the general statute of limitations applicable to the case.

*Clapp* and *Strickland*, on same side,

Filed an elaborate brief, in which they contended for the following propositions, in relation to the validity of the sale made by the administrator.

1st. That the Probate Court is not a court of special or limited jurisdiction, but is general as to the subjects confided to it.

2d. That in relation to the sale of personalty and of land to pay debts, the jurisdiction and power of the court are the same in the one case as in the other.

3d. That whether the Probate Court be one of special or general jurisdiction, where it has jurisdiction of the subject-matter, its judgment or decree imports absolute verity, and is conclusive in any collateral proceeding, of everything having been done which the

law requires to be done, preceding such order or decree, and therefore the order of sale in the case at bar, is, of itself, proof that the court had authority to make it.

4th. That the citation required by the statute in such cases is not strictly speaking process, but the proceeding is a proceeding *in rem,* and the posting and publishing of the citation, a matter *in pais,* and that the purchaser at the administrator's sale, would not be affected by any irregularity or omission in this respect, and need not look behind the decree of the court.

5th. That as the statute does not require the Probate Court to state upon the face of its decrees the evidence upon which the decree is based, the omission to do so cannot affect the validity of the decree.

6th. That considerations of public policy and of justice require, that purchasers at administrators' sales, as well as at execution sales, should be protected against any irregularity or neglect on the part of the officer in matters *in pais.*

And to sustain these propositions, they cited and commented on the following authorities:

Hutch. Dig. pp. 666–7; *Gildart's Heirs* v. *Starke,* 1 How. 450; *Grignon's Lessee* v. *Astor,* 2 How. (U. S.) R. 320; *Tucker* v. *Harris,* 13 Georgia R. 1; *Fisher* v. *Barrett,* 9 Leigh. 131; *Blanton* v. *King,* 2 How. 860; *Carmichael* v. *Browder,* 3 Ib. 255; *Gwin* v. *McCarroll,* 1 S. & M. 368; *Laughlin* v. *Thompson,* 6 Ib. 259; *Planters' Bank* v. *Johnson,* 7 Ib. 259; *Currie* v. *Stewart,* 4 Cushm. 646; *Dillingham* v. *Jenkins,* 7 S. & M. 479; *Gelstrop* v. *Moore,* 4 Cushm. 209; *Hutchins* v. *Brooks,* 2 George R. 432; *Lee* v. *Bennett,* Ib. 119; *Servis* v. *Beatty,* 3 George R. 52; *Lee* v. *Gardner,* 4 Cushm. 543; *Wall* v. *Wall,* 4 Cushm. 413; *Duval's Heirs* v. *McLoskey,* 1 Ala. (N. S.) 708; *Voorhees* v. *The Bank of W. S.,* 10 Pet. 450; *Henderson* v. *Winchester,* 2 George, 294; *Duncan* v. *McNeill,* Ib. 705; *Hardy* v. *Gholson,* 4 Cushm. 72; *Cason* v. *Cason,* 2 George, 592; *Steen* v. *Steen,* 3 Cushm. 531; *Harris* v. *Ransom,* 2 Cushm. 504; *Berrit* v. *Brill,* 2 Ib. 83; *Smith* v. *Denson,* 2 S. & M. 337; *Minor* v. *President and Selectmen of Natchez,* 4 Ib. 619; same case 10 S. & M. 246; *Bland* v. *Muncaster,* 2 Cushm. 62; *Van Campen* v. *Snyder,* 3 How. 66; 8 S. & M. 783; *Doe* v. *Ingersoll,* 11 S. & M. 272; *Doe ex dem Shelton* v.

*Hamilton,* 1 Cushm. 479 ; *Winston* v. *Otey,* 3 Ib. 456 ; *Hodge* v. *Mitchell,* 5 Ib. 560.

Upon the other points involved in the case they argued as follows :

As to the exclusion of the testimony of Earle and Falconer, the object of which was to supply, as far as practicable, proof of publication of the citation, and of the loose manner in which the records of the Probate Court of Pontotoc were kept, we refer to the brief, of Watson and Craft, and think that under the principle settled in *Stevenson's Heirs* v. *McReary,* 12 S. & M. 9, the testimony was clearly admissible.

We also refer to the brief of Watson and Craft, in support of the fourth assignment of errors.

The only or the most material error complained of by the plaintiffs in the court below, was the refusal by the court to charge the principle involved in the decision, *Masters et al.* v. *Dunn et al.,* 1 George, 264, which is, that " if at the time a joint cause of action accrues to several plaintiffs, all of them be under a disability to sue, the Statute of Limitations will not commence running until the disability be removed from all." And therefore, as some of the plaintiffs in this case were, at the time of the sale of the land by the administrator, under the disability of infancy, and were still so, the statute has never commenced running as to any.

The case of *Masters* v. *Dunn* was an action as to personalty ; and we believe every authority cited by the court, where the principle has been recognized, has been a case of the same kind ; and we have no idea that it was the intention of this court that the principle should be applied to real estate. The distinction between personal and real actions is taken in *Barrow's Lessee* v. *Nave,* 2 Yer. 228 ; and the reason assigned is, that in personal actions all must sue or none can, because the right of action is joint, whereas in cases of coparceners or tenants in common of land, one parcener may sue alone. Indeed, at the common law, tenants in common, having several and distinct estates, independent of each other, could not join in an action of ejectment, though joint-tenants and parceners could. *Corbin* v. *Cannon et al.,* 2 George, 572.

We deem the point so clear that the principle decided in *Masters* v. *Dunn* was not intended by the court to be applied to real actions,

that we deem it unnecessary to pursue the point further. In fact, in the case of *Pintard's Lessee* v. *Griffing*, 3 George, 136, the principle is recognized, that in an action of ejectment the action may abate as to one plaintiff who has died, and proceed as to the other, without reviving as to the heirs or representatives of the decedent.

*H. R. Miller*, *W. S. Featherston*, and *T. W. Harris*, for Root's heirs.

We insist that the record of the Probate Court of Pontotoc county was properly excluded by the court below. The sale made under it was void, and vested no title in the purchaser.

It does not show that citations to the heirs had been posted or published, as required by the statute. *Cable* v. *Martin & Bell*, 1 How. R. 558; *Baines* v. *McGee*, 1 S. & M. 208; *Campbell* v. *Brown and wife*, 6 How. R. 106; *Same* v. *Brown et al.*, Ib. 230; *Pucket* v. *McDonald*, Ib. 269; *Gwin* v. *McCarroll*, 1 S. & M. 351; *Smith* v. *Denson*, 2 Ib. 326; *Laughman* v. *Thompson*, 6 Ib. 259; *Minor* v. *Pres. and Sel. of Natchez*, 4 Ib. 627; *Planters' Bank, &c.* v. *Johnson*, 7 Ib. 449; *Gelstrop* v. *Moore*, 26 Miss. R. 206; *Currie* v. *Stewart et al.*, 27 Miss. 52.

The testimony of Earle and Falconer was properly excluded.

The testimony of Earle did not tend to show the probability of the loss of record evidence. The lapse of time had not been sufficient to authorize a resort to presumptions.

He expressly says, that the records of the court were found preserved in well-bound books, and that he does not pretend to say that the books have been mutilated or the papers lost. He found the papers confused; but does not say that any of them were wanting. He merely means to say, of the minutes, that they do not show all that should have been done.

For these reasons, we insist that his testimony did not come within the principles declared in *Stevenson's Heirs* v. *McReary*, 12 S. & M. 9.

The testimony of Falconer was properly excluded. It was an attempt to substitute an unsworn written statement of Foster, for his testimony under oath. No excuse is given for not taking Foster's deposition. No inquiry is made of him for the file of his

Root et al. *v.* McFerrin.

paper, kept by him, and which would be, most likely, found in his possession. No opportunity was afforded to cross-examine Foster.

The testimony of Teel, as to the value of the orchard, was improperly admitted by the court.

The statute only entitles the defendant to be allowed for "valuable improvements." Hutch. Code, 856, Art. 13, § 1.

The court erred in refusing the charge asked by plaintiffs below.

The proof shows that all of the plaintiffs were minors at the time the cause of action accrued. *Jordan* v. *McKenzie*, 30 Miss. 32; *Masters* v. *Dunn*, Ib. 265.

The charges asked by defendant below were properly refused. Authorities last cited.

Even if we are wrong in the position that none are barred, because all were minors when the right of action accrued, still the charges of defendant went too far. In actions of this kind, where some are barred by lapse of time, others, who are not barred, may recover, though the action is joint. *Barrow's Lessee* v. *Nave*, 2 Yerger's R. 227; *Wade* v. *Johnson*, 5 Humph. 117 & 443; 2 Caines' R. 170; 12 John. R. 185; Ang. on Lim. §§ 484, 598, note 1; 1 Baily, S. C. R. 192.

HARRIS, J., delivered the opinion of the court.

This writ of error is prosecuted here by both parties.

The plaintiffs in error commenced their action of ejectment in the Circuit Court, to recover of the defendant the land in controversy, claiming title to it as the heirs at law of Aaron Root, deceased, their father, who died seised thereof. From the record, it appears that Benjamin C. Anderson, as his administrator, sold the land in controversy, on the 5th of October, 1840; that the purchaser took possession, under his purchase, immediately, and he and those claiming under him have held the same ever since; and that defendant claims title under this purchase. The respective ages of plaintiffs appear in the record.

It is objected to defendant's title, that it is void, because the Probate Court had no power to order the sale of the real estate of said decedent for the payment of his debts, unless in compliance with the statute specially conferring that power.

Root et al. *v.* McFerrin.

To support his title, defendant offered in evidence, deeds from Anderson, administrator, and others, deducing title from said administrator to himself, and then offered the records of the Probate Court of Pontotoc county, to show the authority of Anderson, as administrator, to sell the land. To this record, as evidence in the cause, plaintiffs objected, because it shows no citation executed according to the statute, by posting and publication, and no notice, either actual or constructive, to the "persons interested in said lands," to appear and show cause "why so much of the lands of said intestate should not be sold, as will be sufficient to pay his debts." Which objection was sustained by the court, so far as the said records were offered as evidence of authority in the administrator to sell the land of said decedent; but the same was admitted under the plea of the Statute of Limitations. To this ruling of the court both parties excepted, and filed their bills of exceptions. Along with said record, defendant also offered the deposition of B. C. Earle, tending to show, that while the records of the Probate Court of Pontotoc county were not mutilated or lost, they were still not as full and perfect and formal as they should have been; witness could not say that anything actually done by the court was omitted in the minutes; but that he went into the office in 1849, and found the papers of the office in a confused condition.

Defendant also offered to prove by Falconer, that in 1840, "The Holly Springs Banner" (the paper in which the citation referred to was ordered to be published) was conducted and published at Holly Springs, by one Foster, who had left the State, and is now beyond its limits; that no file of said paper is in existence; and that the receipt, produced and offered in evidence, from said Foster to Anderson, as administrator of decedent, for "advertising citation on 21st April, 1840," and "notice to all persons, on the 19th June, A.D. 1840," was in the handwriting of said Foster. To all which testimony offered with said record, plaintiffs objected, and this objection was sustained, and defendant excepted.

Defendant next introduced one Teel as a witness, who proved, that valuable improvements were made on the premises by defendant, worth $6000, including cost of putting apple and peach orchards (estimated at $250) on the land.

To this testimony, as to the cost of the orchard, plaintiffs objected. The objection was overruled, and plaintiffs excepted.

The evidence here closed, and the plaintiffs asked the following instructions :

If the jury believe from the evidence, that the plaintiffs were all minors at the time the cause of action accrued, then the Statute of Limitations did not begin to run against any one of them until all were of age, and they must find for the plaintiffs.

Defendant objected to this charge, and in lieu thereof requested the following :

1. That if the jury believe from the evidence, that on the 24th day of February, 1844, one of the plaintiffs had attained the age of twenty-one years, and was not at that time a married woman, insane, without the limits of the United States, or personally imprisoned, and that this action was not brought until after the lapse of three years from the 24th day of February, 1844 ; and if they further believe from the testimony, that the land sought to be recovered in this action, was sold by the administrator of plaintiffs' father, by virtue of an order of the Probate Court of Pontotoc county, fairly and in good faith ; and that the purchaser at such sale paid the purchase-money therefor; and the land has been held adversely under said sale, since the year 1841 ; and that the plaintiffs claim said land, as the heirs of Aaron Root, deceased, then they must find for defendant.

2. That if they believe from the evidence, that any one or more of plaintiffs were twenty-one years of age, and not under any disability to sue, as much as five years before the bringing of this suit, and that during that time, the land sued for has been held adversely by the defendant, and those under whom he claims, they must find for the defendant.

All of which charges were refused by the court. But in lieu thereof, the court gave the following : "If the jury believe, from the evidence, that any of the plaintiffs were of the age of twenty-one years at the time of the passage of the Act of 1844, and the suit was not brought within three years from that date, or that any of said plaintiffs were minors at the date of that act, and the suit was not brought within five years of their coming of age ; in either case they will find for defendants as to them ; but as to the other plaintiffs, if any were under age at the date of the Act of 1844, and had not reached their majority more than five years before the

commencement of this suit, they will find for them, as if they had sued, without joining the others."

To the refusal of the court to give the charges requested, and to the giving the one so given by the court, both parties excepted respectively.

The errors assigned may be classed under the following heads :

1. The court erred in refusing to allow the record of the Probate Court of Pontotoc county to be read to the jury, as evidence of the authority of the administrator to make sale of the land in dispute ; and in allowing it to be read under the plea of the Statute of Limitations, in connection with the administrator's deed, as evidence of adverse possession.

2. The court erred in the exclusion of the testimony of Earle and Falconer.

3. The court erred in permitting the testimony of witness Teel, in relation to the value of the orchards, to go to the jury.

4. The court erred in refusing the charges asked, and giving that submitted to the jury.

5. The court erred in refusing a new trial.

1. For the defendant it is insisted that the exclusion of the transcript of the record, offered in evidence, as tending to show legal authority in the administrator to sell this land, was erroneous.

And we are earnestly urged to review the repeated decisions of this court on the point now submitted, on account of a supposed inconsistency between the doctrines of the earlier and late cases.

We have carefully considered the arguments, briefs, and references made by counsel and submitted to us, with a view to discover what, if any, inconsistency in principle exists in the cases referred to, from *Campbell* v. *Brown et al.*, in 6 Howard, down ; and while it may be perhaps admitted that in our own, as well as other reports, there has not been as much regard paid to technical accuracy in the language employed, in stating and applying the distinctions between courts of special and limited authority, and those of original and general jurisdiction, as might be desirable, yet we are unable to perceive the great inconsistency relied on by counsel for the defendant.    On the contrary, the language cited, when considered with relation to the facts before the court, and the subject it was employed to discuss in each case, considering their number, will be

found to be in singular harmony with the able opinions contained in our earlier reports on this important subject. 1 How. 62 ; Ib. 444 ; 2 Ib. 604.

It has been held with unvarying uniformity as well as unanimity, that a decree by the Probate Court, and sale of the land of a decedent without the citation and notice required by the statute, appearing either by positive evidence or recital in the record, is void. Not only as against its express provisions, but because it stands opposed to the universal principle of law and common justice, that no man can be deprived of his rights or concluded in any manner by the judgment of a court, without notice of the proceedings against him, either actual or constructive.

Such is the doctrine announced by Judge Trotter in *Campbell* v. *Brown*, 6 How. 234; *Gwin* v. *McCarroll*, 1 S. & M. 351; *Enos* v. *Smith*, 7 S. & M. 85 ; *Ridley* v. *Ridley*, 24 Miss. 648 ; *Blair* v. *Childress*, 25 Miss. 78; *Steen* v. *Steen*, Ib. 513 ; *Joslin* v. *Coughlin et al.*, 26 Miss. 135; *Gelstrop* v. *Moore et al.*, Ib. 206 ; *Currie* v. *Stewart*, Ib. 646 ; and 27 Miss. 52 (same parties) ; *Lee* v. *Gardner*, 26 Miss. 543, is not inconsistent with this doctrine. So also *Gelstrop* v. *Moore*, 26 Miss. 209 ; *Joslin* v. *Caughlin*, 26 Miss. 141; *Hardy* v. *Gholson*, 26 Miss. 72 ; *Currie* v. *Stewart*, 26 Miss. 648 ; *Wall* v. *Wall*, 28 Miss. 413 ; *Cason* v. *Cason*, 31 Miss. 592, 3; *Hutchins* v. *Brooks*, 31 Miss. 432 ; *Henderson* v. *Winchester*, 31 Miss. 294; *Lee* v. *Bennett*, 31 Miss. 128 ; and *Servis* v. *Beatty*, 32 Miss. 86–7.

On the death of the ancestor, the title to his real estate vests immediately in his heirs, and can only be divested by their own voluntary deed or act, or by the judgment or decree of a competent court, " by due course of law." The administrator as such has no interest in or power over the land belonging to his intestate at his death ; nor has the Probate Court jurisdiction over it, for any purpose whatever, by the Constitution, or inherently in the nature of its organization. It is only by virtue of the special, conditional power, conferred by legislative grant, and restricted in its exercise to the happening of the particular event named in the act, that the Probate Court can assume to exert any jurisdiction over land, which by law is vested in the heir. Until the happening of the condition or event specified in the act, no power or jurisdiction

is permitted by the statute to be exercised by either the court, or its officers, over land. The particular "jurisdictional facts and acts" prescribed by law, must first happen in each particular case, and be judiciously ascertained of record, before the power of the Probate Court to order the sale of land attaches.

1st. There must be a report of insolvency by the administrator, exhibiting an account of the personal estate and debts of the estate, to the court.

2d. Citation must issue to all persons interested therein.

3d. This citation must be posted and published, requiring the attendance on a given day, according to the statute.

4th. At the time specified in said citation, or some other appointed time, the court shall hear and determine the allegations and proofs, as to the existence of these "jurisdictional facts," upon which its power depends.

If the judicial investigation should prove, that the personal estate is insufficient for the payment of the debts, and the persons interested and notified to attend, show no good cause to the contrary, then for the first time has attached this special, limited jurisdiction, to order the sale of the land belonging to the heirs of the estate, thus reported insolvent.

Jurisdiction must be thus acquired in each case, over the parties, and over the subject-matter, by the happening of the event, and the performance of the conditions named in the act, before the court can make the order of sale ; and the record must show on its face, these jurisdictional facts, or that they were established, to the satisfaction of the court, on the hearing of the allegations and proofs submitted to it.

To hold, that these important facts, upon which the statute has made the power of the court to depend, shall rest alone in the uncertain memory of the probate judge, or casual bystanders or parties, would be to make the discretion of the court, the only limitation upon its powers. The infant and absent heirs, for whose benefit this power has been so peculiarly limited and restrained, in a very few years, might search in vain for the real truth, among the false "presumptions" which are invoked for its concealment.

The record must show that in the judgment of the court, every fact existed, and every act had been done, which was necessary

to give the court jurisdiction, though the evidence upon which that judgment was founded, need not appear.

After the fact of jurisdiction is established in the record, both over the subject-matter and the person, then all the presumptions arise in favor of their judgments, in these courts of special and limited jurisdiction, which inherently belong and are applied to courts of original general jurisdiction.

In the one case, the court's power and jurisdiction is self-existing, inherent, always ready to be exercised over that subject, without a precedent investigation, to ascertain certain facts, upon which to found its action. It is hence called "original," because beginning with its constitution, and not attaching after the happening of some event or fact, which calls its power into being. It is called "general," because it applies to all subjects embraced within the object of its original organization, and to all parties who can be reached by its process, and bound by its power. But in the other (a court of special and limited jurisdiction), its powers are dependent, inferior, and derivative, not inherent, superior, and original. Until the facts upon which its authority depends are shown to exist, it has no vitality. As soon as it has performed the particular duty enjoined upon it, the power ceases. We must be careful to separate in our minds, the general powers of the Probate Court, as organized under the Constitution, from those of the Probate Court, exercising a special authority, not derived from the Constitution, but delegated by the legislature over a particular subject, and under certain particular circumstances.

This doctrine finds its sanction everywhere in the analogies furnished by legal science.

It is the same distinction existing between the general rights of ownership and a special trust; between the rights and powers of the principal and the special and limited authority of the agent; between a general power and a special power, to do a particular thing; between original power and delegated authority; between superior and subordinate. While the law regards with favor and confidence the acts of the one class, and indulges every presumption of their regularity and propriety, it watches with extreme jealousy, the conduct of the other. Hence the reason of the rule, that in all cases of special and limited authority or jurisdiction, the

power to act must appear on the face of the proceedings, and no presumptions in favor of its existence will be indulged.

The rule is universal in *all courts*, and independent of statutory enactments, that the *record* must affirmatively show, that the party whose rights are directly and immediately the subject of litigation, had notice, either actual or constructive, of such proceedings, before he can be bound or concluded thereby.

No matter whether the court be one of original and general, or of special and limited jurisdiction, it must appear, in either case, *on the face of the record*, that it had jurisdiction by the Constitution or laws of the land, both of the parties and the subject-matter, before it can deprive the citizen of his rights or property by its judgments.

It is a familiar principle, that a judgment is conclusive upon parties and privies, when the court has jurisdiction to render it. Unless such jurisdiction exists, the judgment is a nullity, and may be impeached collaterally. The jurisdiction must extend to the parties, as well as the subject-matter.

The great reason why judgments should be regarded as thus conclusive is, that there may be an end of litigation. "*Sit finis ad litem.*" Public policy demands submission to judgments that have been fairly invoked, fully considered, and finally pronounced; but neither justice, public policy, nor the organic law of the State, will sanction the denial of the right to be heard, by himself, or counsel, or both, to any citizen. The Constitution declares, that political power is inherent in the people; that free governments are founded on their authority, and established for their benefit; that even for crimes, no man shall be deprived of life, liberty, or property, but by due course of law; that the courts shall be open, and every person, for injuries of every character, shall have remedy by due course of law, and justice and right shall be administered without sale, denial, or delay; that no person shall be debarred from prosecuting or defending his cause before any tribunal in the State.

In violation of these rights and prohibitions, designed to protect the liberty and property of the citizen, the courts established "for his benefit," and to administer "right and justice without sale, denial, or delay," can pronounce no valid judgment. The *opportunity* to avail himself of these rights, is as essential as the

rights themselves, and inseparably incident to them ; and hence, this doctrine of "notice" is applicable alike to all tribunals and all judgments under our system. It cannot be tolerated that the doors of justice should be closed against a party who has never heard that his rights were in dispute in the courts, or had an opportunity to defend them. The whole policy and practice of our courts, under the principles of the organic law to which we have just referred, reprobate and condemn such a doctrine. The most liberal policy is extended to the citizen, whether plaintiff or defendant, by our laws. Forms are abolished in pleading, amendments allowed, new trials granted, bills of review, appeals and writs of error provided for, and courts of equity, with all their remedial powers established, that right and justice may be administered without denial.

These rules and principles are mandatory to all the departments of government, and to none more beneficially for the protection of private rights, than to the judicial department.

The hardship of these cases upon purchasers at administrators' sales, and the disquietude in such titles so frequently occurring, are urged upon us as reasons for reviewing the rule heretofore established. Rightly considered, there is no greater hardship or disquietude resulting from the disregard of the act of the legislature under which the sales are made, than from the disobedience and disregard of other laws, human and divine, resulting in loss of life, liberty, or property.

If *men*, with all the means of information which the law has wisely afforded, will not take the trouble to examine the validity of titles which they seek to acquire, but *trust* to the good faith as well as legal knowledge of administrators, or to the competency and integrity of the officers appointed by law, and will neither examine the records for themselves, nor procure competent legal advice, always at hand, to know what they do, they should not expect courts to relieve them of the consequences of their own folly. It is simply a question between them and the heirs—often children,— neither cognizant of their rights nor responsible for the errors and omissions complained of. Which shall lose the title ? Upon whom shall the penalty fall ? Upon the disobedient adult, or the passive ignorant minor ?

We think the rule is wise, just, well settled; and if disquietude results from its observance, it will generally fall on those who, in all ages, have warred against the law : the neglecters and violators of its wise and humane precepts.

We think, therefore, the rejection of this record, which was silent as to the posting and publication of citation as required by law, and showed no notice to the parties interested, so far as it was offered as authority for the sale by the administrator, as well as the rejection of the evidence of Earle and Falconer, intended, doubtless, to supply by parol the omission in the record, was proper.

Was this evidence (the record and deed from Anderson) admissible under the plea of the Statute of Limitations ? Is the remaining point under the first head, to be considered ?

The *fact* of possession, and the *quo animo* with which it was commenced and continued, are questions distinct and separate from the *validity* of deeds or paper titles generally. That a deed is even void for want of some requisite of the law as evidence of a conveyance of the legal title, does not render it incompetent to establish extraneous *facts* unconnected with the question of a paper title to which it may have relation. For instance, it is evidence of the fact that such a deed, although invalid, was executed, should that *fact* be a matter of controversy, as it is evidence of any other fact which it tends to establish when such fact is the matter in issue. Hence, under the plea of the Statute of Limitations, generally a void deed, record, or proceeding may be introduced to show the fact of possession held under it, and the *quo animo*, with which such possession was taken; *as between the parties* to such deed, record, or other conveyance, there could be no question of the truth of this proposition. And as mere acts and declarations of the vendee tending to show the character of his possession, and to qualify and explain the character of that contemporaneous act, they must be admissible, as a part of the *res gestæ*, even where third parties are concerned.

We think, therefore, there was no error in allowing this testimony to go to the jury upon general principles. It is, however, much stronger when considered in reference to the peculiar provisions of the Act of 1844, 5th section, relied on in this case. Hutch. Code, p. 830.

It is said, however, on the part of the plaintiff below, that the judgment should be revoked, because of the admission of the testimony of Teel, proving the value of putting the apple and peach orchards on the land.

The statute allows the jury to offset, against any damages assessed by them in favor of the plaintiffs, the value of all valuable, but not ornamental improvements.

We think this testimony was competent for the consideration of the jury, as there is proof in the record that plaintiffs claimed damages, and this was proof of the annual value of the land.

It is next insisted by both parties that the court erred in giving the charge submitted to the jury, and in refusing their charges respectively.

The charge objected to asserts that if any of the plaintiffs were of age on the 24th February, 1844 (date of the Act of Limitations), and suit was not brought within three years from that date, or if any were minors at the date of that act, and suit was not commenced in five years of their coming of age, in either case the jury will find for the defendant as to them. But as to the plaintiffs who were under age at the date of said act, and had not reached their majority more than five years, the jury should find for them, as though they had sued alone.

From the record it appears that suit was instituted on the 12th September, 1856.

That Sarah Jane Carey was born 1st October, 1822.

James A. Root was born 12th October, 1826.

Harriet H. Couch was born 8th June, 1828.

Margaret A. Root was born 18th December, 1831.

Elizabeth C. Root was born 6th May, 1833.

Thomas J. Root was born 5th January, 1838.

Sarah Jane married Miles Carey 23d December, 1845.

Harriet H. married —— Couch, who died in the spring 1856.

It is insisted, by defendant's counsel, that this is a joint action by six plaintiffs, and the recovery could only have been joint.

It is admitted, that the principle established in *Jordan* v. *McKenzie et al.*, 30 Miss. 32, in relation to *joint rights,* " that the disability of one or more joint owners will not save the rights of others, not so affected, from the operation of the statutory bar,

and that when one joint owner is barred, all are," has no application to *realty* in this State, held by descent.    Under our statutes of descent and partition, there is no substantial difference left between coparceners and tenants in common.    Chancellor Kent, in the 4th volume of his Commentaries, says, that the distinction between them may be considered as essentially extinguished in the United States (see p. 407).

The interests of the heirs in the real estate of the intestate under our statutes, may be regarded as joint and several to some extent.    While all may join in the action of ejectment as held by this court in *Corbin* v. *Cannon et al.*, 31 Miss. 570, their rights are yet several and subject to partition.    Each heir is entitled to his distinct and equal share of the whole in severalty.    The rights of the one, although connected with, are by no means dependent upon, and inseparable from, the rights of the other.    There is, therefore, much reason for the distinction.    In the case of *joint owners* of personal property, when the rights of some are extinguished by the statutory bar, each having only a *joint*, and not a *several*, interest in the subject, all are barred of a recovery for defect in their legal title.    But, in the case before us, where the interests partake of both characters, joint as well as several, the destruction of the rights of the one will not affect the legal title of the others. The case stands, therefore, as upon a joint and several demise at common law, where the jury may find for or against any number of the plaintiffs, as the evidence, in their opinion, may justify. See 12 S. & M. 58, and the 18th instruction for plaintiff, p. 26.

And especially is this so under the Pleading Act of 1850, s. 15, where it is said, " that in every stage of action, the court shall disregard any error or defect in the pleadings or proceedings, which shall not affect the substantial rights of the adverse party.    And no judgment shall be reversed or affected by reason of such error or defect."

Nor is the case before us affected by the decision in the case of *Masters et al.* v. *Dunn et al.*, 30 Miss. 264, where it is held that if, at the time a joint cause of action accrues to several plaintiffs, all of them be under a disability to sue, the Statute of Limitations will not commence running until the disability be removed from all.

This decision was made in an action of detinue for a slave, and

only declares that the plaintiffs below (*Dunn et al.*) are within the saving of the Act of Limitations of 1822, not repealed by the Act of 1844, as decided in *White* v. *Johnson*, 23 Miss. R. 68, and *Simmons et al.* v. *Pickett*, 24 Miss. 467. That clause of the statute does not embrace the action of ejectment; and hence, this case is not within its operation or the principle of the decision founded on it.

We think, therefore, there was no such error in this instruction or in the verdict (which is in accordance with it), as would authorize the interposition of this court.

Let the judgment be affirmed, each party paying half the costs.